# Exhibit 4

*Law Offices of*
***CARSON MESSINGER ELLIOTT***
***LAUGHLIN & RAGAN, P.L.L.C.***
*3300 North Central Avenue, Suite 1900*
*Phoenix, Arizona 85012*
*(602) 264-2261*
*Kevin R. Keating (No. 012216)*
*kkeating@carsonlawfirm.com*
*Attorneys for the Walkers*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PINAL**

| | |
|---|---|
| THE PARSONS CO., INC., | Case No: CVC 2004-01368 |
| Plaintiff, | **WALKER DEFENDANTS'** |
| vs. | **SECOND AMENDED CROSS-CLAIM AND THIRD-PARTY COMPLAINT** |
| AWD RANCH LLC, an Arizona limited liability company; R. W. WALKER and EVE F. WALKER, husband and wife; DESERT PLANTS CONSERVANCY, L.L.C., an Arizona limited liability company, | |
| Defendants. | (Assigned to the Hon. Robert Carter Olson) |
| ETC. | |

For their First Amended Cross-Claim and Third-Party Complaint, Defendants/Cross-Claimants/Third-Party Plaintiffs R. W. Walker and Eve F. Walker allege as follows:

## GENERAL ALLEGATIONS

1. Defendants/Cross-Defendants/Cross-Claimants/Third-Party Plaintiffs R. W. WALKER and EVE F. WALKER ("the Walkers"), husband and wife, reside in the State of Colorado.

2. At all times material hereto, the Walkers were married and were acting on behalf of their marital community.

. . .

3. Defendant AWD RANCH, LLC ("AWD"), is a limited liability company organized under the laws of the State of Arizona and authorized to do and doing business in Pinal County, Arizona.

4. Defendant DESERT PLANTS CONSERVANCY, LLC ("DPC"), is a limited liability company organized and existing under the laws of the State of Arizona and authorized to do and doing business in Pinal County, Arizona.

5. Third-Party Defendant MIMI PIERRON ("Pierron") has caused an act or event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

6. Third-Party Defendant NILES LIPIN ("Lipin") has caused an act or event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

7. Third-Party Defendants LORRAINE KESSELRING and JOHN DOE KESSELRING, husband and wife, have caused an act or event to occur in Pinal County, Arizona, are thus subject to the jurisdiction of this Court, and were, at all relevant times, acting for and on behalf of their marital community.

8. Third Party Defendant THE UNITED STATES OF AMERICA has caused an event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

9. Those Defendants named as JOHN DOES 1 through 10, JANE DOES 1 through 10, A, B, C CORPORATIONS 1 through 10 and X, Y, Z ENTITIES 1 through 10, are fictitious Defendants whose interest may appear subsequent to the date of this Complaint and prior to the recordation of a Lis Pendens or entry of a judgment. As soon as the true identities of these Defendants are known, the Walkers will move for their joinder.

10. The real property which is the subject of these judicial foreclosures is located in Pinal County, Arizona.

. . .

. . .

. . .

Case 2:11-ap-02300-GBN    Doc 54-4    Filed 10/08/12    Entered 10/08/12 15:09:03    Desc
Exhibit    Page 2 of 9

## COUNT ONE

### (Foreclosure of Deed of Trust No. 2002-051893)

11. The Walkers reallege each and every allegation set forth in the preceding paragraphs, and incorporate them herein by reference, as though the same were set forth in full herein.

12. On or about August 21, 2002, DPC, by and through Pierron, both as its managing member and in her individual capacity, executed a Promissory Note, Escrow Number 231-4020039 (LRM) in favor of the Walkers, in the principal sum of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00). A true and correct copy of this Promissory Note is attached hereto as Exhibit A and incorporated herein by reference.[1]

13. The Promissory Note provided that semi-annual installments of Seven Thousand Eight Hundred Seventeen and 28/100 Dollars ($7,817.28) would be paid on or before the 25th day of both March and September, beginning on March 25, 2003, and continuing until the principal balance has been paid in full. Interest on the unpaid principal balance was to accrue at seven percent (7%) per annum from September 25, 2002 until paid in full.

14. The Note further provided that the entire principal balance was to be paid on or before September 25, 2009.

15. The Note further provided that, if any payment was at least fifteen (15) calendar days past due, a late charge in the amount of One Hundred and 00/100 Dollars ($100.00) would become due.

16. The Note further provided that, if any payment was late, the late fee would be One Hundred Twenty-Seven and 00/100 Dollars ($127.00) per day.

17. In addition to the late fees set forth above, the Note further provided that if the payment(s) is at least thirty (30) days past due, then the principal balance shall bear interest at the default rate of five percent (5%) per annum above the stated interest rate of seven percent (7%) per annum.

---

[1]This Exhibit A and each of the other Exhibits B through L discussed below are attached to the Walkers' First Amended Cross-Claim and Third-Party Complaint dated August 22, 2008, and those Exhibits are incorporated herein by this reference, but are not attached to this pleading.

3

G. For interest on the aggregate at the statutory rate of ten percent (10%) per annum until paid; and

H. For such other and further relief as is just and proper under the circumstances.

## COUNT FIVE

### (Fraud)

103. The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs as though the same were set forth in full herein.

104. Count Five herein is being asserted against each of the Cross-Defendants and Third-Party Defendants identified in Paragraphs 3 though 7 above (hereinafter the "AWD Parties.")

105. During the negotiations in 2002 between the Walkers and the AWD Parties that led to the sales and loan transactions that are the subject of Counts One through Four above, The AWD Parties represented to the Walkers that said parties had sufficient income, assets and credit that would be sufficient for them to meet their obligations under the various instruments and loan agreements that said parties signed that are alleged in the above paragraphs of this pleading and are attached as exhibits to the Walkers previous pleadings in this matter (hereinafter, the "Sales and Loan Documents").

106. Said representations were false and misleading, and were intentionally false and misleading, and were made by the AWD Parties to the Walkers to fraudulently induce the Walkers to agree to sell the properties to the AWD Parties and to issue the loans to the AWD Parties as reflected in the Sales and Loan Documents.

107. Upon information and belief, at a point in time that is unknown to the Walkers, the AWD Parties concocted a plan to defraud the Walkers by improperly and illegally misrepresenting themselves as having the requisite income, assets and credit that would be sufficient for them to meet their obligations under the Sales and Loan Documents.

108. Among other fraudulent statements and purposeful misrepresentations, the AWD Parties prepared and presented to the Walkers certain financial statements that falsely represented that the

19

AWD Parties and certain of them had more income and assets than was actually true and correct.

109. As part of the fraudulent plan and scheme, the AWD Parties also secretly, that is without any notice to or discussion with the Walkers, and in direct violation of the terms of the Sales and Loan Documents then being negotiated and signed in and around 2002, created an entity, AWD Farms, for the benefit of which entity the AWD Parties purported to illegally and improperly subordinate and encumber their assets and income as well as the properties in question in this lawsuit.

110. Upon information and belief, that entity AWD Farms may not even have been created until very recently when the AWD Parties sought to carry on their fraudulent plan and scheme even further by falsely creating it in the AWD Parties' efforts to evade their responsibilities and debts and to improperly hide income and assets from the Walkers and others including the Internal Revenue Service and to make false and misleading claims in this lawsuit about their alleged damages.

111. The Walkers believe and therefore allege that the AWD Parties pursued the above-described plan and scheme in order to defraud the Walkers so that the AWD Parties would acquire the above-described properties to use and make profits for their own accounts and, in the process, deprive the Walkers of whatever profits and future sales proceeds that the Walkers would have been able to achieve if they retained the properties in question and/or sold the properties to properly and sufficiently financed persons or entities. In addition, the plan and scheme aided the AWD Parties in submitting false and misleading damage claims in this lawsuit.

112. The Walkers believe and therefore allege that the AWD Parties pursued the above-described plan and scheme with full knowledge that said plan and scheme would result in the Walkers being deprived of their rightful assets and potential profits and sales proceeds to be derived therefrom and that carrying on the plan and scheme would cause the Walkers to expend large amounts of money in seeking to recover possession of the properties in question and to defend themselves against improper claims made against the Walkers by the AWD Parties.

113. The Walkers believe and therefore allege that the AWD Parties, in concocting and pursuing the above-described plan and scheme, knew that their actions in preparing and submitting

Case 2:11-ap-02300-GBN   Doc 54-4   Filed 10/08/12   Entered 10/08/12 15:09:03   Desc
Exhibit    Page 5 of 9

such financial statements and records to the Walkers were false, wrong and fraudulent, or that they performed such actions with a reckless disregard for the truth or falsity thereof, and the AWD Parties concealed or failed to disclose material facts in the documents that comprised the financial records and the oral statements made to the Walkers about the AWD Parties financial condition.

114. The representations by the AWD Parties as described above were false, were intended by the AWD Parties to be false and misleading, were material to said sales and loan transactions, and were made by the AWD Parties with the intent that others, including the Walkers, would rely on them. The Walkers did rely on them and had a right to rely on them, all to the Walkers' detriment and damage.

115. The Walkers believe and therefore allege that the AWD Parties knew when they made the false and fraudulent representations as alleged above that the Walkers and others would rely on them and that the Walkers and others would be injured if the AWD Parties actually went ahead and purchased the properties in question and if the Walkers went ahead and made the loans to the AWD Parties that are reflected in the Sales and Loan Documents.

116. As noted above in this pleading, the Walkers have suffered and/or will suffer significant damages from the AWD Parties' fraud in that the Walkers' followed through and sold the properties to the AWD Parties and signed the loan documents shown in the Sales and Loan Documents and thereafter the AWD Parties defaulted on those loans and the Walkers have been required to resort to seeking redress in this Court for the wrongs perpetrated by the AWD Parties.

117. The acts of the AWD Parties were part of an evil plan and scheme which was of such a grave, intentional and malicious nature amounting to gross misconduct and a total disregard for the rights of the Walkers and others, that an award of punitive damages to the Walkers is fully warranted and justified. The amount of the punitive damages should be an amount appropriate to punish the AWD Parties and to deter them and others from engaging in similar conduct in the future.

**WHEREFORE**, the Walkers ask for Judgment against the AWD Parties as follows:

A. For a Judgment in favor of the Walkers and against the AWD Parties for a sum to fully

compensate the Walkers, not only for the amount of the defaulted loans, the missed payments, the lost interest and fees, but also for all damages that the Walkers have suffered because of the fact that the Walkers have not been able to reap profits and/or sales proceeds from the properties in question since 2002 and because of the fact that the Walkers have expended great amounts of money in expenses and legal fees in seeking redress against the AWD Parties and in the Walkers defending themselves against the spurious claims filed by the AWD Parties in this lawsuit;

B. For Judgment in favor of the Walkers and against the AWD Parties, on the Walkers' claims for punitive damages, in a sum sufficient to adequately punish the AWD Parties and sufficient to deter them and others from engaging in similar conduct in the future.

C. For the court costs incurred herein by the Walkers;

D. For the attorney's fees incurred herein by the Walkers, under any and all applicable statutes and common law principles;

E. For interest on the amount of any Judgment rendered under this Count at the statutory rate until paid; and

F. For such other and further relief as is just and proper under the circumstances.

## COUNT SIX

### (Negligent Misrepresentation)

118. The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs as though the same were set forth in full herein.

119. Count Six herein is being asserted against each of the Cross-Defendants and Third-Party Defendants identified in Paragraphs 3 though 7 above (hereinafter the "AWD Parties.")

120. The AWD Parties made certain misrepresentations in connection with their negotiations with the Walkers regarding the purchase by the AWD Parties of the properties in question and the loans made by the Walkers to the AWD Parties as more fully described above in this pleading.

121. At some point between 2002 and 2008, the AWD Parties also created an entity AWD

22

Case 2:11-ap-02300-GBN    Doc 54-4    Filed 10/08/12    Entered 10/08/12 15:09:03    Desc
Exhibit    Page 7 of 9

Farms as discussed above as part of the false and fraudulent plan and scheme

122. The Walkers believe and therefore allege that the AWD Parties' representations made in connection with above-described negotiations and transactions were false, the AWD Parties knew that they were false or made said representations with a reckless disregard for the truth or falsity thereof, and the AWD Parties concealed or failed to disclose material facts in the documents prepared and submitted to the Walkers in connection with the above-discussed negotiations and transactions.

123. The above-stated acts of the AWD Parties, at the very least, constitute negligent misrepresentation.

124. As noted above in this pleading, the Walkers have suffered and/or will suffer significant damages from the AWD Parties' fraudulent and/or negligent misrepresentation in that the Walkers' followed through and sold the properties to the AWD Parties and signed the loan documents shown in the Sales and Loan Documents and thereafter the AWD Parties defaulted on those loans and the Walkers have been required to resort to seeking redress in this Court for the wrongs perpetrated by the AWD Parties.

125. The acts of the AWD Parties were part of an evil plan and scheme which was of such a grave, intentional and malicious nature amounting to gross misconduct and a total disregard for the rights of the Walkers and others, that an award of punitive damages to the Walkers is fully warranted and justified. The amount of the punitive damages should be an amount appropriate to punish the AWD Parties and to deter them and others from engaging in similar conduct in the future.

**WHEREFORE,** the Walkers ask for Judgment against the AWD Parties as follows:

A. For a Judgment in favor of the Walkers and against the AWD Parties for a sum to fully compensate the Walkers, not only for the amount of the defaulted loans, the missed payments, the lost interest and fees, but also for all damages that the Walkers have suffered because of the fact that the Walkers have not been able to reap profits and/or sales proceeds from the properties in question since 2002 and because of the fact that the Walkers have expended great amounts of money in expenses and legal fees in seeking redress against the AWD Parties and in the Walkers defending themselves against

Case 2:11-ap-02300-GBN    Doc 54-4    Filed 10/08/12    Entered 10/08/12 15:09:03    Desc
Exhibit    Page 8 of 9

1. the spurious claims filed by the AWD Parties in this lawsuit.

2. B. For Judgment in favor of the Walkers and against the AWD Parties, on the Walkers' claims for punitive damages, in a sum sufficient to adequately punish the AWD Parties and to sufficient to deter them and others from engaging in similar conduct in the future.

C. For the court costs incurred herein by the Walkers;

D. For the attorney's fees incurred herein by the Walkers, under any and all applicable statutes and common law principles;

E. For interest on the amount of any Judgment rendered under this Count at the statutory rate until paid; and

F. For such other and further relief as is just and proper under the circumstances.

DATED this ___31st___ day of October, 2008.

CARSON MESSINGER ELLIOTT
LAUGHLIN & RAGAN, P.L.L.C.

By _____
Kevin R. Keating
3300 N. Central Avenue, Suite 1900
Phoenix, Arizona 85012
Tel. No. (602) 264-2261
kkeating@carsonlawfirm.com
Attorneys for the Walker Defendants

COPY of the Foregoing mailed and Faxed this ___31st___ day of October, 2008, to:

Hon. Robert Carter Olson
Judge of the Superior Court
P. O. Box 946
Florence, Arizona 85232
Fax No. (520) 866-5414

24