# Exhibit 11

# KATHY J. CLAYPATCH AFFIDAVIT

State of Arizona )
                  )ss
Maricopa County )

I, Kathy J. Claypatch, under oath and penalty of perjury state and allege as follows:

1. I am the managing member of AWD Farms, LLC (AWD Farms) and as such have personal knowledge of the matters concerning the facts alleged in the Complaint to disallow, or in the alternative, subordinate AWD Farms' Claim.

2. On September 20, 2002, AWD Farms agreed to loan funds and other assets to finance ideas and projects of Niles Lipin and Mimi Pierron and signed an "Agreement and Note for Repayment." AWD Farms saw that the projects had many humanitarian benefits plus would also generate substantial amounts of revenue potential that would enable all projects to be self-sufficient and provide income for the continuance of more future projects in line with our shared humanitarian vision.

3. As part of this business venture, the Agreement and Note for Repayment clearly articulated the parties' agreement and terms for this loan and was signed by Niles Lipin, member, AWD Ranch, LLC, Marie (Mimi) Pierron, member, Desert Plants Conservancy, LLC and AWD Farms, LLC members, Celeste Cockrell, Kathy J. Claypatch, Virginia Greenhalgh, and Loraine Kesselring. At all times since the agreement was made, AWD Farms held Niles Lipin and Mimi Pierron personally responsible for the repayment on the Note.

4. In or about the summer of 2007, as part of one of the projects, the ponds were being dug out in order to harvest the silt and sell it to Pinal County for buildup and improvements to the roads. Pinal County Public Works supervisors/engineers did a site visit in an investigation of the amount and quality of the silt to be used for their purposes. As this affidavit is being written, Pinal County is in the process of improving Pecan Road, the main access road to the 1,100 acres. In addition, back in 2007, Pima County expressed interest in the silt for a landfill near that region that was being planned to be filled-in and buried in the near future. The silt was estimated to be worth 1 million dollars or more and

1

AWD Farms was initially supposed to get most of that sale towards partial repayment of the monies loaned in the Note.

5. In or about 2008, AWD Farms still believed that the silt would be sold and also there were several efforts going on to sell the thousands of cactus and other plants from the nursery. This was all in accord with the agreed upon projects, including the planting of the tree nursery where the land had been leveled and prepared. Potential for profits were expected to be expedited due to a proprietary growth enhancement process developed proven to work already on cactus, and needing to be proven on plants and trees. The potential revenue generating silt project and the cactus and plants projects along with the tree project were never realized due to legal and other issues.

6. In or around December, 2008, AWD Farms was forced to file suit against AWD Ranch/Niles Lipin and Desert Plants Conservancy/Mimi Pierron for having been brought into the lawsuit as defendants in the Parsons/Walkers case in Pinal County and the failed projects resulting in the failure to repay the note as agreed to on September 20, 2002. The lawsuit was originally written and filed without a lawyer.

7. After AWD Farms was sued by Parsons and the Walkers filed allegations about AWD Farms in an amended complaint in CV2004-01368 with the intention of suing AWD Farms, the court ordered and the law required that the LLC needed to hire an attorney, so AWD Farms retained Dustin Dudley, who subsequently appeared for AWD Farms in both cases.

8. Throughout the years, the AWD Farms' members have used the words "investment," "loan," "note payable," and /or "note for repayment," interchangeably. We are not lawyers and they all mean the same to us. The fact has been and remains clear to myself and the other members of AWD Farms that the agreement we entered into was one where there were personal guarantees for repayment as was noted in our original "Agreement and Note for Repayment." Never would I have imagined that the use of the word "investment" in a complaint would be used as semantics against us to assert we never expected to be repaid for all the money lent.

9. AWD Farms would never have entered into an agreement where there were no guarantees for repayment. In fact, included in our ideas for the projects was the potential to eventually negotiate a purchase, once they became profitable, of one or more of the businesses that AWD Farms first financed. We financed these business projects in the hopes of making a profit while furthering our humanitarian beliefs.

10. In or around early 2009, AWD Farms attorney advised us that the complaint against Lipin, et al. would need to be amended. However, AWD Ranch and Desert Plants Conservancy filed for Chapter 11.

11. In or about April, 2009, during a status hearing in the Parsons/Walkers case, AWD Farm's attorney, Dustin Dudley questioned the Walkers' attorney, Kevin Keating, about whether Walkers were going to pursue allegations the Walkers made against AWD Farms and Keating responded that Walkers were not.

12. Shortly after this, in or about June, 2009, after the LLC's bankruptcies were dismissed, Dudley, almost immediately filed a motion for summary judgment to get AWD Farms out of the case. A couple of weeks later, Parson's attorney, Paul Loucks, called Dudley for a stipulation to dismiss AWD Farms out with prejudice.

13. In our minds, the Parsons' dismissal with prejudice and Walkers' removal of their allegations against AWD Farms by choosing to not move forward in the Parsons/Walkers case gave us complete confidence that we could not be sued again.

14. Once Parsons signed the dismissal, and we knew that Walkers were not going to bring us into the Parsons/Walkers case as defendants, AWD Farms members found that there was no longer any further reason to litigate the lawsuit against Lipin, et al. as long as we could do the very best to recover as much of the losses through settlement. Besides all of its prior losses, AWD Farms had lost $90,000-$100,000 in legal expenses and costs. Unfortunately, by this time, in or around the summer of 2009 the silt project had been badly damaged by two years of the wind, rain and weather erosion and in the middle of the heat, the cactus and plants could not be transplanted without risk of shock and complete loss of the crop. Essentially, every business opportunity to make money from the projects had been blocked, interfered with or destroyed.

15. In or around July, 2009, AWD Farms, assisted by our attorney, had settlement negotiations with Niles Lipin/AWD Ranch and Mimi Pierron/Desert Plants Conservancy. Since Niles Lipin suggested a RICO case, and because of the evidence AWD Farms agreed that he had a very strong case for a potential RICO lawsuit and other claims for damages, AWD Farms negotiated what we thought was a fair settlement. AWD Farms members were all very distraught by this time about all the crimes that had occurred on top of the litigation that was wasting our time and had ruined all of our business opportunities. In our settlement, the goal was to try to recover our losses while also allowing Niles Lipin to pursue whatever

3

legal means necessary to recover damages in the Parsons/Walkers case or elsewhere.

16. In or around August 4, 2009, the judgment satisfaction and its supplement documents were drawn up to record in writing the terms of the settlement. In the settlement, AWD Farms allowed Niles Lipin/AWD Ranch and Mimi Pierron/Desert Plants Conservancy a $100,000 credit for legal costs against the 1.8 million dollar settlement for the loan repayment plus a 30 month waiver of collection rights and interest on the Note while they pursued all the litigation.

17. In addition to the agreement, AWD Farms lost business expectations. This loss was the members' expectation of the future businesses that AWD Farms envisioned potentially being a part of and spending the rest of our lives working in. For example, one of the members of AWD Farms is now 70 years old and still working two full-time nursing jobs. Had we been repaid and had the businesses succeeded, this member may have bought into one or more of the businesses on the property that she was passionate about, retired from nursing, and would be leading educational groups such as girl scouts and boy scouts on bird watching tours in the riparian area of the 1,100 acres. This is just one example of the many business expectation losses that the members of AWD Farms have suffered.

18. Niles Lipin, Mimi Pierron, AWD Ranch or Desert Plants Conservancy owes AWD Farms $1.8 million dollars for the money we loaned them based on the 2002 Agreement and Note for Repayment. However the $1.8 was not all that was owed. As part of our agreement AWD Farms fully expected to be able to buy into the potentially very profitable businesses Niles Lipin was developing. AWD Farms and Niles Lipin believed the ability to buy into these businesses was a very valuable asset not reflected in the $1.8 million dollar settlement. AWD Farms saw RICO actions that destroyed Niles Lipin's business efforts and future endeavors. So we calculated the projected damages that could possibly be recovered if Niles Lipin was successful in any future RICO litigation, outside the loan repayment. The $11.1 million dollar figure was an optimistic estimate for recovery of business damages possible in a future lawsuit for RICO. If Niles Lipin had won the RICO case, he would have paid back AWD Farms' loans and the money could have provided capital to buy into current or future businesses developed by Niles Lipin. The RICO case was dismissed and we did not get a penny.

19. As AWD Farms participated in as a defendant and then sat by and watched the outcome of the litigation in Pinal County, I and the other members of AWD

Farms strongly suspected corruption of the court. This is why we believed that Niles Lipin/AWD Ranch and Mimi Pierron/Desert Plants Conservancy would not prevail in any of their claims, but we all still remained hopeful that justice might be served on appeal and they would prevail.

20. At the time of negotiating the settlement, even the worst crimes against AWD Farms, Niles Lipin, Mimi Pierron, Loraine Kesselring, Lisa Charron, Kessel Farm, AWD Ranch, and Desert Plants Conservancy were still to come. Soon after the settlement, the violence increased in or around August 2009 with false imprisonment, a water diversion bridge wash-out, and escalated from April 2010 and after with additional destruction and ongoing theft of property, multiple shootings and arsons.

21. AWD Farms never anticipated prior to signing the agreements referenced above that Niles Lipin and Mimi Pierron would be in bankruptcy personally over two years later, and we never contemplated that we could be a major creditor with an adversary proceeding against us in a federal bankruptcy.

FURTHER AFFIANT SAYETH NAUGHT

Dated this 5th day of October, 2012.

*Kathy J. Claypatch*

State of Arizona
County of Maricopa

Subscribed and Sworn before

me this 5th day of October, 2012

Maria West
Notary of Public

My Commission expires: 06/26/2015



Notary Public State of Arizona
Maricopa County
Maria A West
My Commission Expires 06/26/2015

5